# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GENERAL TRUCK DRIVERS,
WAREHOUSEMEN, HELPERS,
SALES AND SERVICE, AND
CASINO EMPLOYEES,
LOCAL UNION NO. 957,

       Plaintiff,

-vs-

HEIDENLBERG DISTRIBUTING CO,

       Defendant.

Case No. 3:11-cv-420

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant Heidelberg's Motion to Dismiss Amended Complaint (Doc. No. 15). Plaintiff Union has filed a Response in Opposition (Doc. No. 16) and Heidelberg has filed a Reply (Doc. No. 17).

A motion for involuntary dismissal is a dispositive motion under 28 U.S.C. § 636(b)(1)(B), requiring proposed findings of fact and a recommended disposition when referred to a magistrate judge.

Defendant seeks dismissal under both Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (Motion, Doc. No. 15, Page ID 252).

Because federal courts are courts of limited jurisdiction and lack of subject matter jurisdiction is presumed, the burden of persuasion on a Rule 12(b)(1) motion is on the party

1

asserting jurisdiction, here the Union. *Thomson v. Gaskill*, 315 U.S. 442 (1942); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure, Civil 2d*, §1350 (1990).

A facial attack – one made without reference to facts beyond the pleadings -- is proper under Rule 12(b)(1) and requires the Court to assume the truth of all allegations made by a plaintiff. *DLX, Inc., v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004), citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); and *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990).

The Motion to Dismiss was also made under Fed. R. Civ. P. 12(b)(6) whose purpose is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Put another way, "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has recently been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236,

2

> 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005),, at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Bell Atlantic*, 550 U.S. at 558; *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), the allegations in a complaint "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(emphasis in original).

*Bell Atlantic* overruled *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), specifically disapproving of the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced. Following *Iqbal*, district courts faced with motions to dismiss must first accept as true all of the factual allegations contained in a complaint. This requirement "is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 550 U.S. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Applying the *Twombly/Iqbal* standard, Judge Rice has recently written:

> [O]n the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp, of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949-50). Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Id.* (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).

*White v. Chase Bank USA, NA*, 2010 U.S. Dist. LEXIS 102908 (S.D. Ohio Sept. 28, 2010).

The Sixth Circuit has also recently held that to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face", *Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012), quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dept. of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 570 (2007), and that "[a]ll well-pled facts in the complaint must be accepted as true." *Savoie, supra,* citing, *Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir. 2009), citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**The Amended Complaint**

The Union's Amended Complaint (Doc. No. 11) purports to state two claims for relief. Count I purports to arise under the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141, *et seq*. The Union asserts that subject matter jurisdiction over such claims is conferred by § 301 of

the Act, 29 U.S.C. § 185.[1] The Union does not state a substantive law basis for Count II, but alleges

> 33. At all times material herein, Heidelberg had a legal and contractual obligation not to discharge any of its bargaining unit employees represented by Local 957 except for just cause and violated its legal and contractual obligations by discharging Snyder and Kleismit without just cause. Additionally, at all times material herein, Heidelberg had a legal and contractual obligation to provide a pre-discharge hearing before any Local 957 member employed by Heidelberg could be discharged or taken out of service except for certain limited circumstances, which are not applicable herein. Heidelberg violated its legal and contractual obligations to provide a pre-discharge hearing to Snyder and Kleismit by taking them out of service without providing for said hearing with an officer of Local 957 being present.
>
> 34. As a direct and proximate result of the breach of its legal and contractual obligations Heidelberg has caused Local 957 members Snyder and Kleismit to be denied their right to employment with Heidelberg by being discharged or terminated without just cause, and have caused Snyder and Kleismit to suffer lost wages and benefits that they would otherwise be entitled to receive except for Heidelberg's violation of its legal and contractual obligations.

*Id.* at Page ID 195-196. The Union asserts the Court has subject matter jurisdiction over Count II by virtue of its "Supplemental Jurisdiction," which is codified at 28 U.S.C. § 1367. *Id.* at ¶ 18, PageID 193.

The material allegations of the Amended Complaint for purposes of both claims for relief are that Heidelberg and the Union entered into a collective bargaining agreement effective from October 28, 2007, through February 26, 2011 (the "CBA")(Amended Complaint, ¶ 5, PageID 190). The CBA is attached to the Amended Complaint and incorporated by reference. *Id.*

Under Article IV of the CBA, Union member employees cannot be discharged by Heidelberg without just cause and are entitled to a pre-discharge hearing with a Union officer present. *Id.* at ¶ 6.

---

1 The Union also asserts the Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332 (Amended Complaint, Doc. No. 11, ¶ 1, PageID 189. However, the Amended Complaint also asserts Heidelberg is an Ohio corporation (Id., ¶ 4) and does not assert that all Union members are residents of other States. On its face, the Amended Complaint does not state facts sufficient to establish diversity jurisdiction.

The CBA also contains in Article VI a grievance procedure, culminating in final and binding arbitration. *Id.* at ¶ 7.

On August 25, 2011, Heidelberg discharged Union member Stephen Kleismit, assertedly without a pre-discharge hearing and without just cause. Id. at ¶¶ 9-10, 25-26. On June 30, 2011, Heidelberg did the same thing to Union member Dennis Snyder. Id. at ¶¶ 13, 29. Both filed grievances which the Union attempted to have arbitrated on their behalf. Id. at ¶¶ 11, 15, 27, 31. Heidelberg refused to proceed to arbitration, asserting that it had no contractual obligation to do so. Id. at ¶¶ 12, 16, 28, 32. As relief, the Union seeks an order compelling Heidelberg to proceed to arbitration on the grievances or alternatively to reinstate Kleismit and Snyder and award them the compensation they would have received if they had not been terminated without just cause. Id. at Page ID 196-197.

**Analysis**

**Count I**

All facts which the Union pleads and presumably contends are material – discharge, grievance, refusal to arbitrate -- occurred after expiration of the CBA. Heidelberg asserts this timing is fatal to the claims, relying on *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Pepsi-Cola General Bottlers, Inc.,* 958 F. 2d 1331 (6th Cir. 1992)("*Pepsi*")(Motion, Doc. No. 15, Page ID 256). As particularly applicable here, according to Heidelberg, the Sixth Circuit held "the right to be discharged only for just cause is strictly a creature of the collective bargaining agreement and its life as a matter of contract does not extend beyond contract expiration." *Id.* at 1334 (citing *Teamster Local Union 238 v. C.R.S.T.,Inc.,* 795 F.2d 1400, 1404 (8$_{th}$ Cir. 1986) (*en banc*).

The Union asserts *Pepsi* is superseded as to the relevant propositions of law by *South Central Power Co. v. International Brotherhood of Electrical Workers, Local Union 2359*, 186 F.3d 733 (6th Cir. 1999)("*South Central*")(Memo in Opp., Doc. No. 16, PageID 272.) In *South Central*, a collective

bargaining agreement expired on August 31, 1997, and an employee (Skinner) was discharged before a new agreement was effective. The operative facts were that the employer notified the employee on June 24, 1997, that he had to relocate to live within twenty miles of his reporting location. His union filed a grievance and the employer denied it, both before the contract expired. After the contract expired, the employee was terminated for not moving. The union submitted the matter to arbitration and the employer sued to enjoin the arbitration. The employer also sought to enjoin arbitration of another termination (Hogle) where "all of the events relevant to the Hogle suspension occurred post-expiration." 186 F.3d at 739. Judge Graham of this Court enjoined the Hogle arbitration but not the Skinner arbitration, "holding that South Central had an implied duty to submit the dispute to arbitration because the facts and occurrences that led to Skinner's termination arose before the expiration of the Old Agreement." *Id.*

The Sixth Circuit noted that the Supreme Court had held an arbitration clause does not continue in effect after a collective bargaining agreement expires. *Id., citing Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200 (1991). However, it also noted the Supreme Court had created an exception in *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243 (1977). Finally, in *Litton, supra*, the Supreme Court held:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

501 U.S. at 205-206. Interpreting the Supreme Court cases together, the Sixth Circuit held that a dispute arises under an expired contract and is therefore arbitrable "when a majority of the material facts and occurrences arose before expiration of the collective bargaining agreement." 733 F.2d at 740. It contrasted the situation where none of the material facts and occurrences occurred under the expired agreement.

7

The Union is correct in arguing that this case is governed by *South Central*, but wrong in the conclusion it draws. On the face of the Amended Complaint, there are no material facts or occurrences which are alleged to have occurred during the effectiveness of the CBA. In particular, nothing is pled about when the facts which gave rise to the discharge occurred. Count 1 of the Amended Complaint should therefore be dismissed without prejudice[2] for failure to state a claim upon which relief can be granted.

## Count II

As noted above, the Union asserts in the Amended Complaint no substantive law basis for Count II, but merely that Heidelberg had a "legal and contractual" obligation not to discharge Kleismit and Snyder without just cause and without a pre-discharge hearing.

Heidelberg asserts Count II is preempted under the doctrine of *San Diego Bdlg. Trades Council v. Garman*, 359 U.S. 236 (1959), which provides that the National Labor Relations Board has exclusive jurisdiction over unfair labor practice claims. The Union does not assert that the failure of Heidelberg to hold a pre-discharge hearing or its alleged discharge without just cause was an unfair labor practice, so there is no need to determine whether the claim is preempted under *Garman*.

Heidelberg also asserts that the state law claims made in Count II are completely pre-empted under the doctrine of *International Ass'n of Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976). In the absence of Sixth Circuit authority, Heidelberg relies on *Derrico v. Sheehan Emergency Hospital*, 844 F.2d 22 (1988). Mr. Derrico, like Messrs. Kleismit and Snyder, was terminated after the governing collective bargaining

---

2 Dismissal without prejudice is recommended because it is not clear that the Union is unable to allege material facts or occurrences which occurred during the effectiveness of the CBA.

agreement expired. Unsuccessful before the NLRB with his unfair labor practices claim, he brought suit in New York state court on an implied contract claim, asserting the expired CBA's just cause limitation was an implied term. The case was removed to federal court which denied remand and granted the employer's motion to dismiss. On appeal, the Second Circuit held there was no § 301 jurisdiction because the collective bargaining agreement had expired and that the implied contract claim was preempted by federal law:

> Assuming without deciding that the facts of this case state a claim for breach of an implied contract of employment under New York state law, we think that such a claim must be considered preempted. The states are not free to regulate in areas Congress intended to be left to "'the free play of economic forces.'" *See Lodge 76, International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission (Machinists)*, 427 U.S. 132, 140, 49 L. Ed. 2d 396, 96 S. Ct. 2548 (1976) (quoting *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144, 30 L. Ed. 2d 328, 92 S. Ct. 373 (1971)). The Supreme Court has broadly construed this "*Machinists* preemption" doctrine to bar "state interference with policies implicated by the structure of the [NLRA] itself," *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 749, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985). Thus we look to that structure "to determine whether certain conduct [is] meant to be unregulated," *id.* at 749 n.27. We perceive substantial potential for friction between the delicate machinery of the NLRA and the theory Derrico would have us recognize.
>
> Derrico's approach is inconsistent with the NLRA's structure for two reasons. First, it would artificially limit the parties' post-expiration options. When bargaining alone does not produce consensus, the NLRA contemplates that both sides will resort to "economic weapons," *see Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 617-18, 89 L. Ed. 2d 616, 106 S. Ct. 1395 (1986); *Belknap*, 463 U.S. at 500; *Machinists*, 427 U.S. at 141 (quoting *NLRB v. Insurance Agents' International Union*, 361 U.S. 477, 488-89, 4 L. Ed. 2d 454, 80 S. Ct. 419 (1960)). Such resort is an integral part of the balance the NLRA strikes between labor and management. *See, e.g., Golden State Transit*, 475 U.S. at 619. The possibility that a term of an expired CBA might become an "implied" contract under state law would tie the parties' hands in a manner inimical to this facet of the NLRA's collective bargaining process. Exposure to liability at state law for breach of contract under the circumstances of this case would significantly alter the labor-management relationship that follows expiration of a CBA.

> Second, Derrico's theory would significantly affect the collective bargaining process that lies at the heart of the NLRA. *See* NLRA section 1, 29 U.S.C. § 151 (1982); *Golden State Transit*, 475 U.S. at 619; *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 103, 25 L. Ed. 2d 146, 90 S. Ct. 821 (1970). Expiration of a CBA plainly works a significant change in the parties' relationship. Just as plainly, the prospect of that change and the mutual awareness of the tactics to which either side may thereafter resort provide the parties with incentives to negotiate. To allow a CBA provision to linger on after the contract's expiration in the form of an implied contract would dilute these effects. Trivializing the parties' agreed termination mechanism in this manner would also trivialize the very freedom of contract that is a fundamental policy of the NLRA, *see H.K. Porter Co.*, 397 U.S. at 108. To derive an implied contract at state law from the very post-expiration maintenance of *status quo* that the section 8 bargaining obligation *requires* would raise the chaotic prospect that mere compliance with the NLRA would give rise to a contractual commitment in every state where such agreements may be implied from parties' conduct. This consequence would be tantamount to imposing a contract on the parties, a notion that has always been anathema to the NLRA, *see* NLRA section 8(d), 29 U.S.C. § 158(d); *H.K. Porter Co.*, 397 U.S. at 103-04. The potential for disrupting collective bargaining is thus especially serious in this case and compels the conclusion that the state law claim is preempted by the NLRA.

884 F.2d at 28-29. *Derrico* is not binding precedent for this Court, but it is a persuasive interpretation of *Machinists* and this Court should find the claim(s) made in Count II preempted under the *Machinists* doctrine.

The Union asserts that all it is attempting to do in Count II is enforce the just cause obligation which Heidelberg admits it has. As proof of this admission, the Union relies on the June 30, 2011, letter from Richard Grow at Heidelberg to Dennis Snyder which reads in its entirety "Your employment with Heidelberg Distributing has been terminated for just cause. Please review all attachments concerning your situation." (Amended Complaint, Doc. No. 11, Page ID 236.) Thus the Union interprets a claim by Heidelberg that it did have just cause into an admission that it had to have just cause. Under applicable Ohio law3, a termination letter cannot

---

3 Because Count II purports to raise state law claims, this Court must apply Ohio law in construing those claims. 28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie*

be interpreted as creating a binding contract of employment. Under Ohio law where a contract does not specify a particular term or duration, there is a strong presumption of employment at-will unless the contract or other circumstances clearly manifest the parties' intent to the contrary. *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 1, 483 N.E. 2d 150 (1985). A termination letter is about as far as possible from being a document from which Ohio courts would infer a contract of employment. It is therefore respectfully recommended that Count II be dismissed with prejudice as preempted.

May 17, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

---

*Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).