IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GENERAL TRUCK DRIVERS,
WAREHOUSEMEN, HELPERS
SALES AND SERVICE, AND
CASINO EMPLOYEES,
TEAMSTERS LOCAL UNION NO.
957,

           Plaintiff,

   v.

HEIDELBERG DISTRIBUTING
COMPANY,

           Defendant.

:

:

:

:

Case No. 3:11cv420

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S OBJECTIONS TO
MAGISTRATE'S REPORT AND RECOMMENDATIONS (DOC. #20);
ADOPTING THE CONCLUSIONS OF THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATIONS (DOC. # 18); SUSTAINING
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT (DOC. #15), TREATED AS A MOTION FOR JUDGMENT
ON THE PLEADINGS UNDER RULE 12(c); COUNT I OF PLAINTIFF'S
AMENDED COMPLAINT (DOC. #11), ARISING UNDER SECTION
301OF THE LABOR MANAGEMENT RELATIONS ACT, 29 U.S.C. §
185, IS DISMISSED WITHOUT PREJUDICE; COUNT II OF PLAINTIFF'S
AMENDED COMPLAINT (DOC. #11), FOR BREACH OF CONTRACT
UNDER OHIO LAW, IS DISMISSED WITH PREJUDICE; PLAINTIFF
GIVEN LEAVE WITHIN TEN (10) CALENDAR DAYS TO FILE A
FURTHER AMENDED COMPLAINT AS TO COUNT I, IF DESIRED

---

Plaintiff General Truck Drivers, Warehousemen, Helpers Sales and Service,

and Casino Employees, Teamsters Local Union No. 957 (the "Union"), filed suit

against Heidelberg Distributing Company ("Heidelberg"), after Heidelberg

discharged two Union member employees.  The Union seeks court-ordered arbitration, or, in the alternative, reinstatement of its members' employment with back wages.  The claims arise out of Heidelberg's termination of two of the Union members' employment, allegedly in violation of the collective bargaining agreement ("CBA") between the Union and Heidelberg.  The Court's jurisdiction is based on 29 U.S.C. § 185 and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction, under 28 U.S.C. § 1367, over Plaintiff's state law claim for breach of contract.

Pending before the Court is Heidelberg's Motion to Dismiss the Amended Complaint of Plaintiff (Doc #15), brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Based on the reasoning and citations of authority set forth in the Report and Recommendations of the United States Magistrate Judge, filed May 17, 2012 (Doc. # 18), as well as upon a thorough *de novo* review of this Court's file and the applicable law, the Court adopts the recommendations of said judicial report in their entirety, with the variations in reasoning set forth below.  Plaintiff's Objections (Doc. # 20) to the Magistrate Judge's Report and Recommendations are OVERRULED.  Heidelberg's Motion to Dismiss the Amended Complaint of Plaintiff (Doc #15), treated as a Motion for Judgment on the Pleadings under Federal Rule 12(c), is SUSTAINED.  Count I of the Union's Amended Complaint (Doc. #11) is DISMISSED without prejudice. Count II is preempted, and therefore DISMISSED with prejudice.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Defendant Heidelberg is a corporation doing business in Ohio, whose employees are represented in collective bargaining by the Plaintiff Union.  Amend. Compl. ¶¶ 3-4 (Doc. #11).  The parties entered into a CBA valid from October 28, 2007, until February 26, 2011.  *Id.* ¶ 5.  Under Article IV of the CBA, Heidelberg could discharge employee members of the Union only for just cause, and only after a hearing held in the presence of a Union officer.  *Id.* ¶ 6.  Article VI of the CBA contained a grievance procedure, as well as a requirement that the parties submit unresolved grievances to binding arbitration.  *Id.* ¶ 7.  Before the expiration of the CBA on February 26, 2011, the Union and Heidelberg began negotiating a new CBA.  *Id.* ¶ 8.

Stephen Kleismit, Jr. ("Kleismit") was a Heidelberg employee and member of the Union, and was discharged by Heidelberg in an August 25, 2011, letter accusing him of stealing company time.  *Id.* ¶ 9.  Four days later, Kleismit filed a grievance with the Union, alleging that Heidelberg terminated him without just cause, in violation of the CBA.  *Id.* ¶ 10.  Pursuant to the provisions of the CBA, the Union referred Kleismit's grievance to arbitration on September 8, 2011.  *Id.* ¶ 11.  However, five days later, Heidelberg refused to submit the grievance to arbitration, stating that it had no obligation under the CBA to comply with the grievance procedure, because the CBA had lapsed.  *Id.* ¶ 12, Ex. I (Doc. #11 at 51).

3

A similar sequence of events occurred pertaining to the discharge of Dennis Snyder ("Snyder"). Amend. Compl. ¶ 13 (Doc. #11). Snyder received a termination letter from Heidelberg on June 30, 2011. *Id.* He filed a grievance on July 6, 2011, challenging the termination as without just cause, which the Union stated it was processing by arbitration on July 26, 2011. *Id.* ¶¶ 14-15. Heidelberg took the same position with Snyder that it took with Kleismit, and informed him by letter on August 4, 2011, that it refused to process his grievance by arbitration because it had no longer had any contractual obligation under the CBA to do so. *Id.* ¶ 16.

On October 27, 2011, the Union brought suit in the Court of Common Pleas of Montgomery County, Ohio, alleging that Heidelberg had breached the CBA, in violation of Ohio law. Doc. #2. On November 23, 2011, Heidelberg removed that action to this Court, alleging federal question jurisdiction under 28 U.S.C. § 1331. Doc. #1. Heidelberg answered the Union's complaint on December 1, 2011. Doc. #4.

The Union sought leave to amend its complaint on February 15, 2012 (Doc. #10), which the Court granted. In Count I of its Amended Complaint, filed on February 16, 2012, the Union alleged a claim for Heidelberg's violation of the CBA, arising under the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). Count II of the Union's Amended Complaint alleged the claim, under Ohio law, for breach of contract that it had alleged in its original complaint. Doc. #11.

4

Heidelberg filed an Answer to the Union's Amended Complaint on February 23, 2012.

Heidelberg followed its Answer with its Motion to Dismiss Amended Complaint of Plaintiff, filed on March 14, 2012, under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. #15. Therein, Heidelberg argued that the Court lacked subject matter jurisdiction over the Union's claims, and that the Amended Complaint failed to state claims upon which relief could be granted. The Union filed a Response in Opposition to Heidelberg's motion on April 9, 2012 (Doc. #16), to which Heidelberg filed its Reply in Response on April 23, 2012 (Doc. #17).

The matter was referred to Magistrate Judge Michael R. Merz, who issued a Report and Recommendations on May 17, 2012. Doc. #18. Therein, Judge Merz recommended dismissal of the Union's LMRA claim for failure to state a claim upon which relief may be granted, and dismissal of the state law claim as preempted by federal law. Doc. #18. The Union filed an Objection to Judge Merz's Report and Recommendations on June 11, 2012 (Doc. #20), to which Heidelberg filed a Response on June 28, 2012 (Doc. #21). The Union filed its Reply to Heidelberg's Response on July 12, 2012. Doc. #22.

Heidelberg's Motion to Dismiss presents two arguments for dismissal of the Union's claims. Doc. #15. First, the company claims that the CBA's expiration precludes any action brought under Section 301 of the LMRA, 29 U.S.C. § 185, arising from actions that occurred after the CBA's expiration, and that the Union

5

has consequently failed to state a claim upon which relief may be granted.  *Id.* at

5.  Second, Heidelberg argues, based upon two different theories of preemption,

that the Court lacks subject matter jurisdiction over both the Union's federal claim

under the LMRA and the Union's state law breach of contract claim.  Doc. #15 at

7-10.

Under 28 U.S.C. § 636(b)(1)(A), a Federal District Court may refer "any

pretrial matter pending before" it to a Magistrate Judge, with certain enumerated

exceptions, including motions for judgments on the pleadings and motions to

dismiss.  However, Section 636(b)(1)(B) authorizes referral of such excepted

motions to a Magistrate Judge for "proposed findings of fact and recommendations

for the disposition" by the Federal District Court.  The parties are notified of the

Magistrate Judge's Report and Recommendations, and have the opportunity to file

objections.  28 U.S.C. § 636(b)(1)(C).  When a Federal District Court refers a

dispositive motion to a Magistrate Judge under § 636(b)(1)(B), it must conduct a

*de novo* review of that judicial officer's determinations.  See *United States v.

Raddatz*, 447 U.S. 667, 673-74 (1980); *United States v. Curtis*, 237 F.3d 598,

603 (6th Cir. 2001).

Judge Merz's Report and Recommendations recommends dismissal of Count

I, without prejudice, for failure to state a claim upon which relief may be granted.

Doc. #18.  Furthermore, Judge Merz recommends dismissal of Count II (the state

law claim), with prejudice, based upon one of the preemption doctrines put forth

6

by Heidelberg. *Id*.  The Court will conduct a *de novo* review of Judge Merz's recommendations, while addressing the Objections filed by the Union.

Given that "[c]ustomarily, a federal court first resolves doubts about its jurisdiction over the subject matter," the Court will begin by addressing its subject matter jurisdiction and Heidelberg's preemption arguments before turning to the other arguments for dismissal. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

## II.    SUBJECT MATTER JURISDICTION

Heidelberg challenges the Court's subject matter jurisdiction in a motion ostensibly made under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Doc. #15.  However, Rule 12(b) requires that a party assert the defense of lack of subject matter jurisdiction by motion *before* filing a responsive pleading.  Here, Heidelberg filed its motion several weeks after filing an answer to the Union's Amended Complaint.  *See* Doc. #12 & Doc. #15.  However, a party does not waive a defense based on subject matter jurisdiction by failing to raise it by motion before filing a response pleading.  F. R. Civ. P. 12(h)(1).  Furthermore, a court may make a determination of its subject matter jurisdiction at any time.  F. R. Civ. P. 12(h) (3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  Prompted by Heidelberg's request, the Court will examine its subject matter jurisdiction according to the standards for doing so under Rule 12(b)(1).  However, the Court

notes that the actual procedural basis for the examination of its subject matter
jurisdiction is its authority under Rule 12(h)(3).

Heidelberg raises two arguments challenging the Court's subject matter
jurisdiction. Doc. #15 at 7. The first argument asserts that the Union's claims are
preempted under *San Diego Building Trades Council, Millmen's Union, Local 2020
v. Garmon*, 359 U.S. 236 (1959) (hereinafter, "*Garmon*"), and the second
argument asserts preemption under *Lodge 76, International Association of
Machinists and Aerospace Workers v. Wisconsin Employment Relations
Commission*, 427 U.S. 132 (1976) (hereinafter, "*Machinists*"). Doc. #15 at 7-10.
After a discussion of the appropriate standard of review, the Court will set forth its
own jurisdictional analysis, and then address each preemption argument
individually.

### A. The Standard of Review Applicable to Heidelberg's Challenge to the Court's Subject Matter Jurisdiction

A challenge to the subject matter jurisdiction of the United States District
Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure may either be
facial or factual. *Carrier Corp. v. Outokumpu Oyj*, 673 F. 3d 430, 440 (6th Cir.
2012). A facial challenge requires all of the plaintiff's allegations to be accepted
as true, "much as with a Rule 12(b)(6) motion." *Id.* In contrast, a factual
challenge to the court's subject matter jurisdiction allows the court to "weigh
evidence to confirm the existence of the factual predicates for subject matter
jurisdiction," without presuming the truth of the allegations. *Id.* (citing *RMI*

8

*Titanium Co. v. Westinghouse Elec. Corp.*, 78 F. 3d 1125, 1134 (6th Cir. 1996)).

Here, both of Heidelberg's challenges to the Court's subject matter jurisdiction are

purely legal, as they are based on doctrines of preemption. Because Heidelberg's

challenges are legal, the Court will assume all of the Union's factual allegations to

be true, as with the standard of review for a motion made under Rule 12(b)(6).

**B.** **The Court has Subject Matter Jurisdiction over the Union's Claim Arising under Section 301 of the LMRA**

Section 301 of the Labor Management Relations Act confers subject matter

jurisdiction on Federal District Courts, stating as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. 185(a). By authorization of Congress, Federal District Courts have

federal question subject matter jurisdiction over "all civil actions arising under the

Constitution, laws, or treaties of the United States." 29 U.S.C. § 1331. Section

301 of the LMRA is unquestionably a law of the United States. Thus, a suit

brought under that law, regardless of the citizenship of the parties or the amount in controversy, is within the subject matter jurisdiction of the Federal District Courts.[1]

Statutory requirements not expressly characterized as jurisdictional do not factor into a court's analysis of subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). In *Arbaugh*, a female bartender brought a complaint for sexual harassment under Title VII against her employer, a New Orleans restaurant. *Id.* at 507. Two weeks after a jury trial resulting in a $40,000 verdict in her favor, the restaurant filed a challenge to the district court's subject matter jurisdiction under Rule 12(h)(3) of the Federal Rules of Civil Procedure. *Id.* at 508. The restaurant alleged that it did not meet the statutory definition of an "employer," because it employed fewer than fifteen persons. *Id.* The restaurant had previously "admitted Arbaugh's 'jurisdictional' allegations" when filing its responsive pleadings, and the factual issue of its employee count had never been

---

[1] The Union has also asserted that the diversity of citizenship statute, 29 U.S.C. § 1332, provides the Court with subject matter jurisdiction over this action. Doc. #11 at 1. Diversity of citizenship exists when the parties are citizens of different states and the amount in controversy exceeds $75,000. 29 U.S.C. § 1332. Although the Union alleges that Snyder and Kleismit are owed back wages in excess of $75,000 (Doc. #11 at 9), its Amended Complaint is silent as to the citizenship of the parties. Thus, there are no facts that, as alleged, provide a discernible basis for the Court having diversity jurisdiction over the matter. In addition, Section 301 of the LMRA specifically confers subject matter jurisdiction "without respect to the amount in controversy or without regard to the citizenship of the parties," and therefore provides a more expansive basis for the Court's jurisdiction over such disputes than the diversity statute. *See Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1006 (6th Cir. 2009) (describing components of Section 301 that "ease access to the federal courts," including "relax[ing] subject-matter jurisdiction by permitting federal courts to handle such cases without regard to the amount in controversy or the existence of diversity jurisdiction").

addressed at trial. *Id.* Acknowledging that it and other courts "have been less than meticulous" when addressing the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy," the Supreme Court instructed courts only to treat a threshold limitation on a claim as jurisdictional if Congress expressly states that the limitation is a jurisdictional requirement. *Id.* at 511, 516. The Supreme Court, therefore, held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id.* at 516.

The Sixth Circuit applied *Arbaugh* to Section 301 of the LMRA in *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2009). *Winnett* was a class action brought by Caterpillar workers who retired after their union's original agreement with Caterpillar expired, but before the parties had agreed to a successor agreement. *Id.* at 1003. The retirees sued to recover retirement medical benefits described in the original agreement's documentation, which did not specify when their rights to those benefits vested. *Id.* at 1003-04. Caterpillar argued that it violated no contract because the original agreement had expired by the time the plaintiffs retired, and, without a valid CBA, the court had no subject matter jurisdiction over the LMRA claim. *Id.* at 1004.

After an explication of the *Arbaugh* holding, the Sixth Circuit noted that the language of Section 301 of the LMRA makes no express mention of subject matter jurisdiction, only personal jurisdiction. *Id.* at 1006. Furthermore, all of the elements of a prima facie claim appear together in the same subsection at 29 U.S.C. § 185(a), with no textual support "for the notion that some of [the]

11

elements of a Section 301 claim, but not others, have subject-matter-jurisdictional consequences." *Id.* This application of *Arbaugh* to the retirees' Section 301 claim led the Sixth Circuit to hold that the existence of a valid union contract is an element of a claim under the LMRA, "not a limit on federal subject-matter jurisdiction." *Id.* at 1007; *see also Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (applying *Arbaugh* and holding that a "violation" or breach of a CBA was not a jurisdictional prerequisite to a Section 301 claim).

Here, the Union has brought a claim under Section 301 of the LMRA against Heidelberg before the Court, alleging that Heidelberg violated the terms of the CBA. Doc. #11. Because it arises under the LMRA, a law of the United States, the claim as alleged is sufficient to invoke the federal question subject matter jurisdiction of the Court. Heidelberg argues that the expiration of the CBA divests the Court of jurisdiction. Doc. #15 at 8. But the existence of a CBA is not an expressly jurisdictional requirement of the statute. *See* 29 U.S.C. § 185(a). As the Sixth Circuit explained in *Winnett*, the existence of a CBA "is an element of Plaintiffs' merits claim, not a limit on federal subject-matter jurisdiction," and is, therefore, properly challenged by motion under Rule 12(b)(6). *Winnett*, 553 F.3d at 1007. Based on the foregoing, the Court concludes that it has subject matter jurisdiction over the Union's LMRA claim.

12

### 1.    *Garmon preemption does not apply to the Union's LMRA claims.*

Under the well-settled doctrine of *Garmon* preemption, a claim based on activity that is "arguably subject" to Sections 7 or 8 of the National Labor Relations Act ("NLRA"), as an unfair labor practice, is within the exclusive jurisdiction of the National Labor Relations Board ("NLRB").  *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959).  In such a situation, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."  *Id*.

An exception to *Garmon* preemption occurs in situations "where Congress has affirmatively indicated that such power should exist."  *Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 297 (1971).  Thus, where there is an "independent federal remedy," a court "may enforce congressional remedies created by a different federal statute," as long as the result does not conflict with the NLRA.  *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 610 (6th Cir. 2004) (citing *Comm. Workers of Am. v. Beck*, 487 U.S. 735, 743-44 (1988)).  An example of a statute that creates a remedy independently of the NLRA is Section 301 of the LMRA, 29 U.S.C. § 185, which expressly confers subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization" upon any Federal District Court.

13

In support of its argument that *Garmon* preemption applies to the Union's claims, Heidelberg cites *International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers of America, Local Union 1199 v. Pepsi-Cola General Bottlers, Inc.*, 958 F.2d 1331 (6th Cir. 1992) (hereinafter, "*Pepsi-Cola*"). Heidelberg interprets *Pepsi-Cola* to hold that "claims related to the termination of bargaining unit members after the expiration of a CBA arise solely under Section 8(a)(5) of the NLRA," subjecting them to preemption under *Garmon*. Doc. #15 at 8.

In *Pepsi-Cola*, a union sued *Pepsi-Cola* under Section 301 for refusing to submit a terminated employee's grievance to arbitration. 958 F.2d at 1332. The grievance was based on incidents that occurred after the expiration of the CBA between the union and Pepsi, and the employee was terminated shortly before the implementation of a new CBA. *Id*. at 1332-33. The union presented several unsuccessful arguments to defend its Section 301 claim, one of which asserted "that Pepsi had an obligation to arbitrate [the employee's] grievance because elimination of the arbitration provision was not encompassed by Pepsi's pre-impasse proposals" during bargaining. *Id.* at 1336. The Sixth Circuit recognized that the union's "argument may state a claim for an unfair labor practice in violation of § 8(a)(5) of the [NLRA], which is within the exclusive jurisdiction of the [NLRB]," but, as stated, did not "support its claim . . . for breach of a contractual obligation under § 301." *Id.*

14

Thus, *Pepsi-Cola* recognized the possibility that a claim arising out of an employer's refusal to arbitrate a post-expiration grievance "may" constitute an unfair labor practice subject to the exclusive jurisdiction of the NLRA, and consequent preemption under *Garmon*. *Id.* The Union interprets *Pepsi-Cola* as stating that any such claims "arise solely" under the NLRA, but the Court cannot interpret the Sixth Circuit's conclusion so broadly. Doc. #15 at 8. Furthermore, the *Pepsi-Cola* union brought a Section 301 claim after the parties had bargained to impasse, the workers went on strike, and the union claimed that the employee's "discharge was strike-related and may have violated the National Labor Relations Act." *Id.* at 1338. It is unsurprising that the *Pepsi-Cola* court concluded that the union's Section 301 claim, which was purportedly based on "breach of a contractual obligation," was incongruous with factual circumstances describing quintessential unfair labor practices. *See* 29 U.S.C. § 157 (protecting employee's right to engage in "concerted activities"); *N.L.R.B. v. Wash. Aluminum Co.*, 370 U.S. 9, 16-17 (stating that strike-related discharge is unlawful under the NLRA).

Here, in contrast, the Union's Amended Complaint does not allege facts describing any readily apparent violation of the NLRA. "A breach of a collective bargaining contract is not, per se, an unfair labor practice." *Pittsburgh Plate Glass Co., Chem. Div. v. N.L.R.B.*, 427 F.2d 936, 946 (6th Cir. 1970); *see also Pleasantview Nursing Home, Inc. v. N.L.R.B.*, 351 F.3d 747, 754 (6th Cir. 2003) (stating that "precedent is clear that courts, not the NLRB, are the proper forum for enforcement of contracts, including CBAs"). The Union does not allege that

15

Heidelberg's refusal to submit to arbitration was an unfair labor practice.  Instead, the Union alleges that, under the CBA, Heidelberg was bound to follow arbitration procedures, and that the company breached its "contractually mandated" obligation to arbitrate.  *Id.*  The Union's allegation fits squarely within the "[s]uits for violation of contracts between an employer and a labor organization" that arise under the LMRA.[2]  29 U.S.C. § 185(a).  In the absence of any readily apparent violation of the NLRA, the Court cannot conclude that *Garmon* preemption applies to the Union's claim.

As Judge Merz states in his Report and Recommendations, "[t]he Union does not assert that the failure of Heidelberg to hold a pre-discharge hearing or its alleged discharge without just cause was an unfair labor practice, so there is no need to determine whether the claim is preempted under *Garmon*."  Doc. #18 at 8.  Because the Union's allegations only concern the agreement between the parties and its alleged breach, the allegations are confined to the jurisdiction expressly granted to the Court under Section 301.  Thus, the Court cannot agree with

_____

[2] The Court is also mindful of "the distinction between two sometimes confused or conflated concepts: federal-court 'subject-matter' jurisdiction over a controversy[,] and the essential ingredients of a federal claim for relief."  *Arbaugh*, 546 U.S. at 503.  Thus, the Court reserves its scrutiny of the factual allegations underlying the Union's claim for its analysis of Heidelberg's challenge under Rule 12(b)(6), in order to prevent the type of non-jurisdictional, merits-based analysis of subject matter jurisdiction proscribed by the Supreme Court in *Argbaugh* and the Sixth Circuit in *Winnett*.  *Id.*; *Winnett*, 553 F.3d at 1007.

Heidelberg's contention that *Garmon* preemption applies, and the Court accordingly

adopts the reasoning and conclusion of Judge Merz on this issue.

> ### 2. *Section 301 of the LMRA completely preempts the Union's claim for breach of contract under Ohio law.*

Heidelberg puts forth a second preemption argument, based on *Lodge 76,*

*International Association of Machinists and Aerospace Workers v. Wisconsin*

*Employment Relations Commission*, 427 U.S. 132 (1976).  Doc. #15 at 7.

*Machinists* allows an employer or union to "properly employ economic weapons

Congress meant to be unregulable" by preempting state law claims based on the

parties' self-help conduct which would otherwise frustrate the purposes of the

NLRA.  *Machinists*, 427 U.S. at 147.

In support of its argument for *Machinists* preemption, Heidelberg asks the

Court to adopt the reasoning of the Second Circuit Court of Appeals in *Derrico v.*

*Sheehan Emergency Hospital*, 844 F.2d 22 (2nd Cir. 1988).  In *Derrico,* the

plaintiff's state law claim was based on the theory that the defendant had

breached an "implied contract" that "arose by virtue of the parties' conduct in

continuing their relationship under the CBA's terms following its expiration."

*Derrico*, 844 F.2d at 22.  Thus, the "implied contract," and not the CBA itself, was

the basis for the plaintiff's claim.  The court held that there was no jurisdiction

under Section 301 of the LMRA, as the statute had "no application in the absence

of a currently effective CBA," a conclusion that was "bolstered by the nature of

the 'implied' contract" alleged by the plaintiff.  *Id.* at 25.  It was this purported

17

"implied contract," alleged by the plaintiff to be "independent" of the CBA, which the Second Circuit found preempted under *Machinists*, because it would limit the parties' options for bargaining after expiration and use state law to impose a contract on the parties. *Id.* 28-29.

Herein, the Union asserts that its state law claim does not implicate the policy concerns of *Machinists*, because Heidelberg previously "acknowledged and accepted" its responsibility to continue the just cause requirement for termination, and, therefore, the claim "could not alter the labor-management relationship." Doc. #16 at 15. Judge Merz points out that the Union confuses Heidelberg's statement that "it did have just cause" in a termination letter to Snyder with "an admission that it had to have just cause," and that such a termination letter is inconsistent with a party's intention to create a binding employment contract. Doc #18 at 10-11. He therefore recommends that this Court adopt the Second Circuit's interpretation of *Machinists* and find Count II of the Union's Amended Complaint, the state law claim for breach of contract, preempted under that doctrine. *Id* at 11.

The Court need not reach the issue of preemption under *Machinists*, however, because Section 301 of the LMRA completely preempts the Union's state law breach of contract claim. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557 (1968). Even though the Union originally brought its claim in state court, it arises under Section 301, is within the original jurisdiction of the federal district courts, and is therefore subject

18

to the "federal substantive law" of the LMRA.  *Id*. at 559-60.  Pertinent here is the

following description by the Supreme Court of its decision in *Avco*:

> The necessary ground of decision was that the preemptive force of §
> 301 is so powerful as to displace entirely any state cause of action
> "for violation of contracts between an employer and a labor
> organization."   Any such suit is purely a creature of federal law,
> notwithstanding the fact that state law would provide a cause of
> action in the absence of § 301.  *Avco* stands for the proposition that
> if a federal cause of action completely preempts a state cause of
> action any complaint that comes within the scope of the federal cause
> of action necessarily "arises under" federal law.

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23-24 (1983).

Section 301's complete preemption applies to "claims founded directly on rights

created by collective-bargaining agreements, and also claims 'substantially

dependent on analysis of a collective-bargaining agreement.'"  *Caterpillar Inc. v.*

*Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l Bhd. of Elec. Workers v.*

*Hechler*, 481 U.S. 851, 859 n.3 (1987)).  Thus, a claim must arise independently

of a CBA to avoid complete preemption under Section 301.  *See Caterpillar*, 482

U.S. at 399 (affirming improper removal of state law complaint for breach of

individual employment contracts).

The Sixth Circuit applies the following two-step test to determine if a state

law claim is subject to complete preemption under Section 301: "First, courts must

determine whether resolving the state-law claim would require interpretation of the

terms of the collective bargaining agreement. . . .  Second, courts must ascertain

whether the rights claimed by the plaintiff were created by the collective

bargaining agreement, or instead by state law."  *Mattis v. Massman*, 355 F.3d

19

902, 906 (6th Cir. 2004). If the answer to either inquiry is "yes," Section 301 completely preempts the state law claim. *Id.*

Here, Count II of the Union's Amended Complaint, which invokes the Court's supplemental jurisdiction, contains its claim for breach of contract under state law. Doc. #11 at 5. In Count II, the Union alleges that Article IV of the CBA contains a requirement that employees "can only be discharged for just cause," and that a hearing is required before discharging an employee. *Id.* The Union further alleges that Heidelberg "violated its legal and contractual obligations by discharging Snyder and Kleismit without just cause," and that the company "violated its legal and contractual obligations to provide a pre-discharge hearing to Snyder and Kleismit" when it summarily discharged them. Doc. #11 at 8.

Based on these allegations, it is indisputable that the Court would have to interpret the terms of the CBA to resolve the issue of whether the provisions the Union refers to were breached. Such an inquiry would satisfy the first *Mattis* inquiry for preemption. Furthermore, the right to be discharged only for just cause and the right to a hearing before discharge are rights that the Union claims solely based on the language of the CBA, with no reference to any independent right under Ohio law. *See*, *e.g.*, *Dobrski v. Ford Motor Co.*, 698 F.Supp.2d 966, 986-87 (N.D. Ohio 2010) (dismissing state law claim for "breach of the duty of good faith and fair dealing" as unable to "stand alone as a separate cause of action independent from the underlying breach of contract claim," and therefore preempted by Section 301). Based on these affirmative answers to both of the

20

*Mattis* inquiries, the Court concludes that Count II of the Union's Amended Complaint is completely preempted by Section 301 of the LMRA. The Court, therefore, adopts the recommendation of Judge Merz to dismiss Count II with prejudice, the state law claim for breach of contract, albeit with its own reasoning for preemption.

**III.  HEIDELBERG'S MOTION TO DISMISS THE UNION'S LMRA CLAIM (DOC. #15), TREATED AS A MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE 12(c)**

Rule 12(b) of the Federal Rules of Civil Procedure lists seven defenses a party may assert by motion, but "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." The Union filed its Amended Complaint on February 16, 2012. Doc. #11. In response, Heidelberg filed an Answer on February 23, 2012 (Doc. #12), and then filed its Motion to Dismiss on March 14, 2012 (Doc. #15). Thus, Heidelberg's Motion to Dismiss was untimely filed, as it asserts defenses under Rule 12(b)(1) and Rule 12(b)(6), which are properly raised by motion before filing an answer.

However, under Rule 12(h)(2)(B), a party may raise the defense of failure to state a claim upon which relief may be granted by a motion under Rule 12(c) for judgment on the pleadings. Thus, "as a matter of motions practice, such a motion may be properly considered as one for judgment on the pleadings under Fed.R.Civ.P. 12(c), and evaluated, nonetheless, under the standards for dismissal under Rule 12(b)(6)." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434,

436 n.1 (6th Cir. 1988).  Therefore, the Court will treat Heidelberg's motion for failure to state a claim upon which relief may be granted under Rule 12(b)(6) as a motion for judgment on the pleadings made under Rule 12(c).

###### A.  The Standard of Review Applicable to a Motion for Judgment on the Pleadings under Rule 12(c)

For a motion brought under Federal Rule 12(c), the standard of review is equivalent to the standard of review applicable to a motion brought under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  "Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs."  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F. 3d 426, 430 (6th Cir. 2008)).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition to the facts and allegations stated in the complaint, "matters of public records, orders, items appearing in the record of the case, and exhibits attached to

22

the complaint may also be taken into account" when ruling on a motion brought

under Rule 12(c).  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)

(quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

### B.    The Union's LMRA Claim Fails as a Matter of Law

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,

allows "[s]uits for violations of contracts between an employer" and a union to be

brought in Federal District Court.  A suit must allege a cognizable contract violation

to arise under Section 301 of the LMRA.  *See Textron Lycoming Reciprocating*

*Engine Div., Avco Corp. v. United Auto., Aerospace & Agric. Implement Workers*

*of Am.*, 523 U.S. 653, 657 (1998) (holding that Section 301 provided no

jurisdiction to hear employer's declaratory judgment action based on voidable labor

contract, where no breach of contract was alleged).  Contracts that the statute

covers include, but are not limited to, collective bargaining agreements.  *Retail*

*Clerks Int'l Ass'n, Local Unions Nos. 129 & 633 v. Lion Dry Goods, Inc.*, 369 U.S.

17, 25 (1962).

The Supreme Court has identified two "source[s] of possible constraints

upon the employer after the expiration of a collective-bargaining agreement."

*Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190,

203 (1991).  The first constraint is the statutory command in Sections 8(a)(5) and

8(d) of the NLRA, codified at 29 U.S.C. §§ 158(a)(5) and (d), to bargain in good

faith.  The NLRA imposes a "duty not to effect unilateral changes in most terms

and conditions of employment" upon the employer. *Litton*, 501 U.S at 203.  Thus, under the NLRA, most unilateral changes made to terms and conditions of employment after expiration of a CBA amount to unfair labor practices. *See N.L.R.B. v. Katz*, 369 U.S. 736 (1962) (finding violation of duty to bargain collectively imposed by Section 8(a)(5) where employer unilaterally granted merit increases and made changes to sick leave policy during bargaining).  However, "arbitration clauses are excluded from the prohibition on unilateral changes" and thus do not "by operation of the NLRA[,] as interpreted in *Katz*, continue in effect after expiration of a collective-bargaining agreement." *Litton*, 501 U.S. at 199-200 (adopting rule as set forth by the NLRB in *Hilton-Davis Chem. Co.*, 185 N.L.R.B. 241 (1970)).

Of particular relevance here is the second possible source of post-expiration constraints on an employer, arising "from the express or implied terms of the expired agreement itself." *Litton*, 501 U.S. at 203.  This includes a presumption in favor of post-expiration arbitration of disputes arising out of the collective bargaining agreement. *Id.*  Such a presumption "must be negated expressly or by clear implication." *Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers' Union*, 430 U.S. 243, 255 (1977).  However, the presumption is "limited to disputes arising under the contract," and *Nolde* "does not announce a rule that postexpiration grievances concerning the terms and conditions of employment remain arbitrable." *Litton*, 501 U.S. at 205.  Rather, the Court described three situations where such grievances arise from the CBA itself:

24

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id.* at 205-06.

In *Pepsi-Cola*, the Sixth Circuit applied *Litton* and upheld summary judgment against a union's claim arising from the grievance of an employee's termination for events that took place after the CBA's expiration.  *Pepsi-Cola*, 958 F.2d 1331. None of the three situations described in *Litton* supported a finding that the *Pepsi-Cola* dispute "arose out of" the CBA.  *Id.* at 1334.  None of the facts and occurrences prompting the grievance arose before expiration.  *Id*.  In addition, the termination did not infringe the right to be terminated only for just cause, because that right only lived as long as the contract.  *Id.*  There was also no express provision in the agreement that any right to be terminated only for just cause survived expiration of the contract, and the dispute did thus not "arise out of" the contract.  *Id.*  Applying the *Litton* factors to the Union's claims, the Court reaches the same conclusion herein, for the reasons stated below.

### 1. No fact or occurrence giving rise to the dispute occurred before the CBA expired.

Citing *Pepsi-Cola*, Heidelberg argues that the Union cannot state a claim for a violation of the LMRA based on a breach of the CBA, because that agreement expired prior to the events on which the Union bases its claims.  Doc. #15 at 5.

Heidelberg argues that, under *Pepsi-Cola*, an employer is not bound to arbitrate grievances regarding an employee's termination after the expiration date of the agreement mandating arbitration. *Id.* 5-6.

In response, the Union cites authority that upheld court-ordered arbitration of grievances that occurred after the expiration of CBAs containing arbitration provisions, including the Sixth Circuit's decisions in *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers-Local 1603 v. Transue & William Corp.*, 879 F.2d 1388 (6th Cir. 1989) and *South Central Power Co., v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d 733 (6th Cir. 1999).

The Sixth Circuit revisited the Supreme Court's *Litton* test and elaborated on the requirements for meeting its first prong in *South Central*. 186 F.3d 733. In that case, the challenged grievance was based on the termination of an employee that occurred between the effective dates of two collective bargaining agreements. *Id.* at 736. Several of the facts leading to termination occurred before the expiration of the CBA, including the employee's misrepresentation that justified the termination and the employer's discovery of the misrepresentation. The fact that the termination occurred after the expiration of the original collective bargaining agreement complicated the analysis using *Litton*'s first factor, because "if none of the facts and occurrences had arisen prior to the expiration . . . then arbitration would clearly not be required." *Id.* at 739. This led the Sixth Circuit to refine *Litton*'s first factor, by holding that "a dispute 'arises under the contract' when a *majority* of the *material* facts and occurrences arose before the expiration of the

26

collective bargaining agreement." *Id.* at 740. To aid in this analysis, the court further added:

> The material facts and occurrences that may be considered in making this determination include, but are not limited to, the factual predicate underlying the grievance, whether any grievance was filed or pursued, and the timing of discipline or discharge of the employee. Because these cases are predominately factual in nature, this will necessarily be a case-by-case determination. If a majority of the material facts or occurrences are found to arise prior to the agreement's expiration, then the presumption in favor of arbitration will apply and the parties will be bound by the agreement's arbitration clause.

*Id.*

The only facts occurring after the expiration were the employee's termination and the lapse of a grace period provided to remedy the misrepresentation, leading the Sixth Circuit to conclude that *Litton's* first factor was satisfied, and the presumption applied. *Id.* It therefore upheld the district court's finding that the employer was required to arbitrate. *Id.*

Herein, Judge Merz found that the specific exception to the *Pepsi-Cola* rule recognized by the Sixth Circuit in *South Central* did not apply to the Union's claims, because the exception only applies when the facts giving rise to the grievance occur before the expiration of the collective bargaining agreement. Doc. #18 at 7-8. He therefore recommended that Count I of the Union's Amended Complaint be dismissed without prejudice. *Id.*

The Court agrees with Judge Merz. In contrast to the facts of *Litton*, all of the material facts and occurrences pertaining to Kleismit's dismissal are alleged to have taken place *after* the expiration of the CBA between Heidelberg and the

27

Union.  The CBA was effective between October 28, 2007, and February 26, 2011.  The factual predicates underlying the grievance include Kleismit's alleged deviation from his normal delivery routes on August 23, 2011, and August 25, 2011.  Doc. #11 at 6, 44.  These actions resulted in his termination "for dishonesty and 'stealing time'" on August 25, 2011.  *Id.*  Kleismit filed a grievance on August 29, 2011, and the Union referred it to arbitration on September 8, 2011.  *Id.* at 6.  Finally, Heidelberg notified the Union of its refusal to proceed to arbitration on September 13, 2011.  Not a single material fact or occurrence as alleged arose prior to the February 26, 2011, expiration of the CBA.  The first relevant occurrence and factual predicate to Kleismit's discharge, the alleged delivery route deviation, arose over six months after the CBA's expiration.  The Court thus agrees with Judge Merz's observation that "there are no material facts or occurrences which are alleged to have occurred during the effectiveness of the CBA."  Doc. #18 at 12.

Similarly, with regards to Snyder's termination and grievance, the Amended Complaint contains no allegations of material facts or occurrences that occurred prior to the expiration of the CBA.  The Amended Complaint states that Heidelberg terminated Snyder's employment via letter on June 30, 2011, based on alleged "inappropriate conduct at a customer's facility."  Doc. #11 ¶ 13.  No date for that conduct, the initial factual predicate underlying the grievance, is alleged, nor is one indicated in the exhibits attached to the pleadings.  Snyder filed a grievance on July 6, 2011.  *Id.* ¶ 14.  The Union notified Heidelberg it was processing the

grievance by arbitration on July 26, 2011, and, on August 4, 2011, Heidelberg notified the Union that it was refusing arbitration of Snyder's grievance. *Id.* ¶¶ 15-16. As with Kleismit's grievance, not a single fact or occurrence surrounding Snyder's grievance is alleged to have occurred before the expiration of the CBA. Based on the foregoing, the Court cannot conclude, based on *Litton*'s first inquiry into the timing of pre-expiration facts and occurrences, that either dispute described in the Union's Amended Complaint "arose out of the contract."

> **2.** **The right to be terminated only for just cause did not accrue or vest under the CBA.**

In Plaintiff's Objections to the Report and Recommendations, the Union argues that Judge Merz only examined and applied the first of *Litton*'s three possible exceptions to the general rule, but did not apply either the "vested right" exception or the "surviving contract right" exception. Doc. #20 at 3. The Union asserts that both exceptions apply, and that the just cause provision of the CBA created a vested right. *Id.* at 4. In response, Heidelberg argues that the Union waived the "vested right" argument by not raising it in the Union's original response to Heidelberg's Motion to dismiss. Doc. #21 at 4-5*.* Heidelberg further argues that even if considered, the right did not vest, and, under *Pepsi-Cola*, the Union was required to file its claim with the NLRB. *Id* at 6. In its Reply Memorandum, the Union disputes Heidelberg's assertion that it waived either argument, and points to specific examples in the record where they were raised. Doc. #22 at 4-5, 7.

Judge Merz did not address the second or third prongs of *Litton*, because he applied the Sixth Circuit's holding in *South Central*, which did not concern vested or surviving contract rights to a CBA.  Doc. #18 at 6-8.  In order to fully address the Union's Objections, and to review the Report and Recommendations with a level of scrutiny appropriate to the *de novo* standard, the Court will examine the Union's claim under the second and third situations described in *Litton*.

*Litton*'s second inquiry examines whether the right to be terminated for just cause accrued or vested under the expired CBA.  *Litton*, 501 U.S. at 205-06.  There are "two basic ways" to demonstrate "that the right is accrued or vested and thus survives the expiration of the CBA."  *Cincinnati Typographical Union No. 3, Local 14519, Commc'n Workers of Am. v. Gannett Satellite Info. Network*, 17 F.3d 906, 910 (6th Cir. 1994).  The first method is "standard principles of contract interpretation," and the second method recognizes rights that courts typically assume to be accrued or vested.  *Id.* at 910-11.

Applying standard principles of contract interpretation, a court "might conclude the parties intended a right to vest if [it is] shown contract language or extrinsic evidence to support that conclusion."  *Id.* at 910; *see also Litton*, 501 U.S. at 207 (stating that "[r]ights which accrued or vested under agreement will, as a general rule, survive termination of the agreement").  Black's Law Dictionary defines a vested right as "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent."  Turning to the language of the CBA itself, the Court confirms that Article IV,

"Cause for Discharge," does contain the "requirement" mentioned in the Union's Amended Complaint: "No employee covered by this Agreement shall be disciplined or discharged without just cause." *Id.* at 14. However, Article IV contains no indication that the parties intended this to be a vested right akin to a property right that requires affirmative relinquishment by the grantee. Furthermore, it is difficult to read language such as "failure to comply with these provisions will be deemed a direct violation of the whole agreement" as indicating a right exists that outlives the agreement itself. *Id.* In other words, "it does not provide us with evidence of the intended *duration* of the right with regard to particular employees." *Gannett*, F.3d 906 at 911. Article IV describes the limited exceptions to the right, the requirement of a hearing before termination, the Union's right to strike if an employee is terminated without a hearing, when to submit a grievance, when to appeal from termination, and the steps for progressive discipline. *Id.* Thus, the language of Article IV mainly describes procedures to enforce the right to be discharged only for cause, and the Court cannot identify any clause or provision that describes this right as vesting permanently.

Furthermore, the Court does not recognize the right to be terminated for just cause as a type of right that courts "presume to be 'accrued or vested.'" *Gannett*, 17 F.3d at 911. Examples of such presumably vested or accrued rights include readily quantifiable ones, such as the right to severance pay or vacation time. *Id.*; *see also United Parcel Service, Inc. v. Unión de Tronquistas de Puerto Rico, Local 901*, 426 F.3d 470, 473-74 (1st Cir. 2005) (applying *Litton*, describing vacation

31

time as "the classic example of a benefit that - barring explicit provision to the contrary - accrues during the term of the agreement," and concluding that "the right at issue is objectively quantifiable"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied & Indus. & Serv. Workers Int'l Union v. Am. Standard Corp.*, No. 11-5476, 2012 WL 2354365 at *4 (6th Cir. June 21, 2012) (applying the First Circuit's "objectively quantifiable" standard in *Unión de Tronquistas* and holding that a right to severance pay vested under the CBA in question). In *Gannett Satellite*, the Sixth Circuit specifically contrasted vested rights that incrementally accrue with rights that are purely the result of collective "bargained-for worker protection, like the rights not to be discharged that were at issue in *Litton* and *Pepsi-Cola*." *Gannett Satellite*, 17 F.3d at 911. These principles clearly apply to the right as described in Article IV of the CBA. In the absence of any contractual language manifesting the parties' intent to the contrary, the Court concludes that the right not to be discharged except for just cause was not a vested or accrued right under the CBA between the Union and Heidelberg.

The Union argues, in its Objections to the Magistrate Judge's Report and Recommendations, that once an employee completes the probationary period described in Article V, the just cause requirement of the CBA then becomes an accrued or vested right. Doc. #20 at 4. The Union asks the Court to read Article IV and Article V together, so that it may infer the existence of a vested right that the CBA nowhere actually describes. *Id.* However, the reading of the CBA urged by the Union does not result in such an inference. Article V, titled "Probation

32

Period," merely delays the placement of a new employee on the "regular seniority list" by seventy-five days.  Doc. #11 at 15.  This delay does not transform it into the type of vested right described by the Sixth Circuit in *Gannett Satellite*, such as vacation or severance pay.  The right may "vest" in the sense that an employee may only invoke it after seventy-five days of probationary employment, but this preliminary delay does not lead to the inference that it survives the CBA itself. Without explicit contractual language so stating, it is not at all "evident that the parties intended the just cause requirement to be an accrued or vested right under the collective bargaining agreement," as the Union asserts.  Doc. #20 at 4.

In conjunction with its vested right argument, the Union also argues that, under the Supreme Court's holding in *N.L.R.B. v. Katz*, 369 U.S. 736, 745 (1962), Heidelberg may not unilaterally effect changes in the terms and conditions of employment "until bargaining in good faith to impasse has occurred at which time the employer may resort to unilateral changes, in conformity with prior [bargaining] offers, if it so chooses."  Doc. #20 at 4.  The Union has misinterpreted the applicability of *Katz*'s holding, which involved a claim that arose under Sections 8(a)(5) and 8(d) of the NLRA, to its claim brought under Section 301 of the LMRA. *Katz*, 369 U.S. at 737.  Claims under Section 8 of the NLRA are under the exclusive jurisdiction of the NLRB and must be brought "in the first instance" before the Board.  *Garmon*, 359 U.S. at 244-45; *see also Pepsi*-Cola, 958 F.2d at 1336 (drawing distinction between claims under each statute, as union's possible claim under the NLRA "may state a claim for an unfair labor practice," but was

33

"within the exclusive jurisdiction of the National Labor Relations Board," and therefore could not support a claim "for breach of a contractual obligation under § 301" of the LMRA). Thus, any claim by the Union invoking *Katz*'s unilateral change doctrine would not be properly brought before this Court. As stated previously, *see supra* Part II.B.1, the Union did not plead a violation amounting to an unfair labor practice under the NLRA. If it had, the Court would not have had jurisdiction over such a claim.

### 3. Neither the right to be terminated only for just cause nor the arbitration provision survived the expiration of the CBA.

Because the first two *Litton* prongs were not satisfied, the Union's claim will only arise under the CBA if, based upon "normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton*, 501 U.S. at 205-06.

The Union asserts that the just cause provision survives if the employer makes no proposal to modify or terminate the provision, and therefore the *Litton* exception applies. Doc. #20 at 6. In response, Heidelberg argues that the "surviving contract right" exception was waived. Doc. #21 at 6. Even if considered, Heidelberg asserts that controlling Sixth Circuit authority requires the employer to affirmatively manifest some intent to be bound by expired terms for a claim to fall under the "surviving right" exception. *Id.* at 7-9.

The Union cites an opinion of the Third Circuit Court of Appeals for the proposition that "ordinary principles of contract interpretation favor" a post-

34

expiration continuation of the CBA's provisions, as long as they are not incompatible with federal labor policies.  Doc. #20 at 5 (citing *Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers Int'l Union of Am*, 28 F.3d 347 (3rd Cir. 1994)).  *Luden's* specific holding did not sweep quite so broadly.  In *Luden*, the Third Circuit recognized, partly on the basis of an "unartful and imprecise" wage provision, the existence an "implied-in-fact CBA" that formed on the date the CBA expired, from which the duty to arbitrate arose.  *Luden*, 28 F.3d at 349.  The Third Circuit did not find that the "implied-in-fact CBA" survived the contract under the third prong of *Litton*.  *Id*. at 361 n.24.  To the contrary, it emphasized that it was not applying *Litton* at all.  *Id*. (stating that the court did not "need to consider whether any of these three *Litton* prongs applies to the facts of this case" because the duty to arbitrate was never discharged).  Thus, the Court finds *Luden*'s analysis largely inapplicable to the Union's claim.

Of actual relevance, however, is the Sixth Circuit's holding in *Pepsi-Cola* that applied the third prong of *Litton* that "the right to be discharged only for just cause did not survive the expiration of a collective bargaining agreement."  *Gannett Satellite*, 17 F.3d at 911 (citing *Pepsi-Cola*, 958 F.2d 1331).  The facts of *Pepsi-Cola* that are pertinent to the third *Litton* inquiry are extremely similar to those alleged by the Union: refusal of the employer to submit a union member's grievance resulting from discharge to arbitration, after expiration of the CBA that mandated arbitration when a union member was terminated for cause.  *Pepsi-Cola*, 958 F.2d at 1332-33.  Here, as in *Pepsi-Cola,* the relevant provision "does not

35

explicitly provide that the right to be discharged only for just cause survives termination of the agreement." *Id.* at 1334. Without such language, herein, the Court cannot conclude that the just cause provision survived the expiration of the CBA. The Union's claim satisfies none of the three exceptions described in *Litton*, and therefore, as a matter of law, the Union's dispute with Heidelberg could not have "arisen out of" the CBA. The Court, therefore, adopts the Judge Merz's recommendation to dismiss without prejudice[3] Count I of the Union's Amended Complaint (Doc. #11).

## IV.    CONCLUSION

Based on its *de novo* review of the Magistrate Judge's Report and Recommendations (Doc. #18), the Court adopts the recommendations of the Magistrate Judge to DISMISS without prejudice Count I of the Union's Amended Complaint (Doc. #11), and to DISMISS with prejudice the state law breach of contract claim alleged in Count II, although with the basis for preemption described herein. *See supra* Part II.B.2.

---

[3] The Court dismisses Count I without prejudice because, as Judge Merz noted, "it is not clear that the Union is unable to allege material facts or occurrences which occurred during the effectiveness of the CBA." Doc. #18 at 8 n.2. If, under *South Central*, the Union can allege that a majority of the material facts and occurrences that gave rise to the discharge of Kleismit and Snyder took place before the expiration of the CBA, it may be able to state a viable claim under the first *Litton* exception. *South Central*, 186 F.3d at 740; *see supra* Part III.B.1. If Plaintiff wishes to file such a further amended complaint as to Count I, one must be filed within ten (10) days from the date of this Decision and Entry. If no such Amended Complaint is filed, Count I will be dismissed with prejudice and the captioned cause terminated.

Accordingly, Plaintiff's objections to the Magistrate Judge's Report and Recommendations (Doc. # 20) are OVERRULED.  Heidelberg's Motion to Dismiss the Amended Complaint of Plaintiff, treated as a Motion for Judgment on the Pleadings under Federal Rule 12(c), is SUSTAINED.


Date: March 6, 2013

WALTER H. RICE
UNITED STATES DISTRICT JUDGE